UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY T. McLAUGHLIN,

    Plaintiff,

v.                                                                                                  Case No. 05-72305

INNOVATIVE LOGISTICS GROUP, INC.,                        HONORABLE AVERN COHN
a Michigan corporation, NORMAN E. KLEIN
and NANCY O'CONNELL, jointly and
severally,

    Defendants.

_____/

**MEMORANDUM AND ORDER DENYING DEFENDANTS'
MOTION TO DISMISS AND REFER TO ARBITRATION[1]**

I.  Introduction

This is a case under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*.  Plaintiff Mary T. McLaughlin (McLaughlin) was a salaried employee of defendant Innovative Logistics Group, Inc. (ILG).  McLaughlin says that she was terminated while on medical leave for a serious medical condition in violation of the FMLA.  The termination letter was signed by defendant Nancy O'Connell (O'Connell), then an administrative manager for ILG, and authorized by defendant Norman E. Klein (Klein).  ILG says that McLaughlin was terminated for poor performance, not in violation of the FMLA.

---

[1]The Court originally scheduled this matter for hearing.  Upon review of the parties' papers, however, the Court finds that oral argument is not necessary.  See E.D. Mich. LR 7.1(e)(2).

Before the Court is ILG, O'Connell, and Klein's motion to dismiss and refer to arbitration. For the reasons that follow, the motion is DENIED.

## II.  Background

McLaughlin began working as an employee of ILG in June 2001. The employment contract was signed by McLaughlin as an employee and O'Connell as a witness; the signature line for the corporate representative was never signed. The employment contract included multiple provisions, including an at-will employment clause and an arbitration clause, the relevant provisions of which are discussed below.

## III.  Analysis

### A.  Applicable Law

A court must determine allegations concerning the validity of an arbitration agreement before final resolution of a motion to compel arbitration. Burden v. Check Into Cash of Ky., LLC, 267 F.3d 483, 493 (6th Cir. 2001).

The Federal Arbitration Act (FAA) preempts state law regarding arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10-11, 79 L. Ed. 2d 1, 104 S. Ct. 852 (1984). The Court of Appeals for the Sixth Circuit has repeatedly applied the FAA to arbitration agreements formed in the employment setting. Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 376 (6th Cir. 2005). "State contract law, however, governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." Glazer v. Lehman Bros., 394 F.3d 444, 451 (6th Cir. 2005)(citing Doctor's Assoc. v. Casarotto, 517 U.S. 681, 686-87 (1996)).

### B.  General Standard

The FAA provides that "[a] written provision ... to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... , shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA." Glazer v. Lehman Bros., 394 F.3d 444, 450 (6th Cir. 2005)(internal citations omitted).

To compel arbitration under the FAA, the Court must find all four of the following: (1) the parties agreed to arbitrate; (2) the matter at issue is within the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, Congress did not intend the claims to be nonarbitrable; and (4) if some, but not all, of the claims in the action are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. Glazer v. Lehman Bros., 394 F.3d 444, 451 (6th Cir. 2005).

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs. v. Communications Workers of Am., 475 U.S. 643, 648 (1986).  State law governs the determination of whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-944 (1995).

C.  Parties' Arguments

ILG, O'Connell, and Klein say that there is a valid agreement to arbitrate signed by McLaughlin.  As support, they rely solely on the language of the arbitration clause.

McLaughlin argues that the arbitration clause is invalid due to (1) lack of contract formation, or (2) lack of mutuality of obligation to arbitrate.

ILG, O'Connell, and Klein did not file a reply brief and therefore have not addressed the issues raised by McLaughlin.

1.  Lack of contract formation

McLaughlin first argues an agreement to arbitration was never formed because while McLaughlin signed the employment contract as an employee and O'Connell signed the contract as a witness, a corporate representative failed to sign the contract to bind the corporation.

Under Michigan law, the intention of the parties governs when fewer than all of the parties to a contract sign a contract:

> In cases where a writing which purports to evidence a contract between several named persons has been signed by less than all those named, it is often found that the signers did not intend to become contractually bound until all the apparent parties sign and deliver the writing. This is not, however, immutable doctrine. ... [T]hose who do sign the writing may have intended to be bound by its terms even though less than all the named persons sign. Their intention governs. The intention of the parties is a fact to be decided upon the evidence, not by invoking our personal, professional, or judicial experience.

Wiegand v. Tringali, 22 Mich. App. 230, 233-234; 177 N.W.2d 435 (Mich. Ct. App. 1970).

The relevant text of the employment contract provides:

> 14. UNDERSTANDING OF AGREEMENT.  **By their signatures below, the parties acknowledge that** (I) they have had sufficient time and opportunity to, and have, carefully read each provision of this Agreement, (ii) they have had the

> time and opportunity to review the Agreement with legal counsel of their choice, (iii) they understand each provision, (iv) they are not under any duress, (v) they are not relying upon any representations or promises that are not set forth in this Agreement, and (vi) **they are freely and voluntarily signing this Agreement and intend to be bound by it as a solemn contractual undertaking**.
>
> **I have read this Agreement carefully, understand it, and intend to be bound by it.**

Employment and Confidentiality Agreement dated 6-18-01 (emphasis added).

McLaughlin signed the agreement and began employment with ILG. O'Connell, as a representative of ILG, presented the contract to McLaughlin. O'Connell signed the contract as a witness. While a representative of ILG did not sign the contract in his or her capacity as a corporate representative, ILG does not assert that it did not intend to be bound and ILG's actions, including allowing McLaughlin to begin employment and paying McLaughlin for the services show an intent to be bound.[2]

Furthermore, the contract provides that the contract "should not be construed against [ILG] if there is any dispute over the meaning or intent of any provisions." Employment and Confidentiality Agreement dated 6-18-01. Contrary to McLaughlin's assertions, the contract does not expressly provide that all signatures are required for the contract to be valid.

This case is similar to Green v. Gallucci, 169 Mich. App. 533, 538-539 (Mich. Ct. App. 1988). In Green, a patient sought to avoid arbitration in a medical malpractice dispute because the arbitration agreement that the doctor was provided by the hospital and signed was never signed by the hospital. The Court held that mutuality of assent between the hospital and doctors was established when the hospital offered the

---

[2]ILG has not provided an explanation for the reason that the contract was not signed.

participation agreements to the doctors and the doctors accepted them by signing, so the contract was formed regardless of the absence of the hospital signature.  Green, 169 Mich. App. 533, 538-539 (Mich. Ct. App. 1988).

Thus, the arbitration agreement is not unenforceable due to a lack of contract formation.

### 2.  Lack of mutuality of obligation to arbitrate

McLaughlin next argues that the arbitration clause is unenforceable due to a lack of mutuality.

For there to be a valid contract to arbitrate, the "agreement must be binding on both [parties] or else it is binding on neither."  Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 315 (6th Cir. 2000).  When the agreement to arbitrate is not binding on both parties, the agreement cannot be enforced due to lack of consideration.  Id., See also Smith v. Chrysler Financial Corp., 101 F. Supp. 2d 534 (E.D. Mich. 2000).

The employment contract provides in relevant part:

> 12.    ARBITRATION.  **Corporation may, but is not required to, seek arbitration** as to any claims it may have against employee.  **Employee only, agrees** that any and all claims, disputes and other matters in question arising out of or relating to this Agreement, or the breach thereof, **shall be promptly submitted to and heard and determined by arbitration** in the County of Wayne, State of Michigan, and each party shall appoint one arbitrator and the arbitrators so appointed shall select a neutral arbitrator. ... Employee is responsible for his/her own costs and expenses (including but not limited to attorney fees and ½ of the fees and expenses of the neutral arbitrator) incurred in enforcing rights under the arbitration process.
> **Employee, only, agrees that time is of the essence** under this Agreement ... **Failure to demand** said arbitration within three hundred sixty five (365) days **by Employee precludes Employee** from instituting any type of claim, lawsuit, or request for arbitration for alleged violations of this Agreement. ...

Employment and Confidentiality Agreement dated 6-18-01 (emphasis added).  Under the unambiguous text of the contract, ILG has the option arbitrate, while McLaughlin is

required to arbitrate.  The Sixth Circuit rejected a similar provision in <u>Walker v. Ryan's Family Steak Houses, Inc</u>., 400 F.3d 370, 380 (6th Cir. 2005).  The court stated that the arbitration agreement which required the employee to submit to arbitration, but allowed the employer to chose arbitration or use the court system was "fatally indefinite."  <u>Id</u>.

Here, because the arbitration clause between McLaughlin and ILG is not binding on both parties, it lacks mutuality of obligation and cannot be enforced.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 26, 2005, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager
(313) 234-5160